IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 17-07289 ESL |
| VANESSA NAVARRO BETANCOURT<br>DEBTOR | CHAPTER 11 |
| JOSE A. LUGO ALEJANDRO<br>ELSA PEREZ RAMIREZ | |
| PLAINTIFFS | ADV. PROC. 20-00089 |
| v. | |
| VANESSA NAVARRO BETANCOURT | |
| DEFENDANT | |

OPINION AND ORDER

This case is before the court upon the *Motion to Dismiss Adversary Proceeding* filed by the Defendant Vanessa Navarro Betancourt (Docket No. 13)*;* and the *Opposition to Motion to Dismiss* filed by the Plaintiffs, Jose A. Lugo Alejandro and Elsa Perez Ramirez (Docket No. 18).

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(I). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Relevant Procedural History

The Debtor filed a Chapter 7 voluntary petition on December 14, 2017 (Docket No. 1, Lead Case No. 17-07289). The Debtor included in Schedule E/F, as unsecured debt, three (3) claims relating to the Plaintiff Mr. Jose A. Lugo Alejandro, as follows: (1) Item 4.7 for the amount of

$33,147.50 described as "state court judgment"; (2) Item 4.8 for the amount of $5,000.00 described as "Judgement: Attorney[']s Fees, Cost Expenses and Interest"; and (3) Item 4.9 for the amount of $2,500.00 described as "Judgement- ATT fees. Cost, Expenses and Interest". Additionally, the judicial proceedings were included in the *Amended Statement of Financial Affairs*, Part 4, Item 9 (Docket No. 9, Lead Case No. 17-07289). On March 16, 2018 the court entered an *Order of Discharge* under 11 U.S.C. § 727 (Docket No. 17, Lead Case No. 17-07289). On May 28, 2018 the Chapter 7 Trustee filed a *Report of No Distribution* (Docket No. 21, Lead Case No. 17-07289).

On February 10, 2020, Plaintiffs, Jose A. Lugo Alejandro and Elsa Perez Ramirez ("Movants and/or "Plaintiffs") filed their *Motion to Reopen Chapter 7 Case* (Docket No. 28) which was granted on March 3, 2020 (Docket No. 31, Lead No. 17-07289).

On February 10, 2010, the Movants filed adversary proceeding no. 20-00021, where they requested the court the modification of the discharge injunction entered on March 16, 2018, in favor of Debtor, to obtain compliance with state court judgment directing the Debtor to perform certain mitigation work. However, on April 9, 2020, the Debtor/Defendant replied with a *Motion to Dismiss Pursuant to 11 U.S.C §727(e)(1) and/or (e)(2)* alleging that the court lacked jurisdiction to entertain the complaint for it being time barred. On May 18, 2020, the Plaintiffs filed an *Opposition to Defendant's Motion to Dismiss* arguing that what Plaintiffs seek was the modification of the discharge injunction granted to Defendant pursuant to 11 U.S.C. § 727(b), invoking the Court's power in equity to enter orders to prevent an abuse of process pursuant to 11 U.S.C. §105(a) (Docket No. 29, Adv. Proc. 20-00021). They argued that they seek the enforcement of the state court judgment to prevent the loss of their residence, and not an order to pursue the collection of a debt as banned by 11 U.S.C. §727(b). On May 22, 2020, the court granted the Defendant's *Motion to Dismiss* and, in its *Opinion and Order,* stated the following:

> "Even though plaintiffs have stated that the complaint does not seek to collect on a prepetition debt or the revocation of the discharge, but the modification of the discharge based on equitable principles, the court will address the time limitations to file an action for the revocation of the discharge order. The "only action that a party may take once a discharge has been entered is revocation of discharge" under 11 U.S.C. §727(d). In re Castle, 289 B.R. 882, 887 (Bankr. E.D. Tenn. 2003). The equity provisions under section 105(a) to issue orders necessary or appropriate to carry the provisions of the Bankruptcy Code may not be used to "override explicit mandates of other sections of the Bankruptcy Code." Law v. Siegel, 571 U.S. 415 at 421, 134 S. Ct. 1188, 188 L.Ed. 146 (2014); In re Reyes-Colon, 922 F. 3d 13, 22 (1st Cir. 2019). Therefore, the statutory time limitations for the revocation of a discharge order are dispositive and the bankruptcy court may not alter the same on equity principles under section 105(a)." (Docket No. 31, Adv. Proc. 20-00021).

On June 19, 2020, Mr. Jose A. Lugo Alejandro and Ms. Elsa Perez Ramirez filed Adversary Proceeding No. 20-00089 seeking declaratory judgment (Docket No. 1, Adv. Proc. 20-00089). The Plaintiffs allege that while the Defendant created an access road to her recently constructed residence, she affected the hill that supports the Plaintiffs' residence and its stability. Consequently, the Plaintiffs' property started to show cracks and separation to the foundation of their residence. After several judicial procedures, on February 26, 2016, judgment was entered against the Debtor and Bonifacio Navarro, awarding Plaintiffs the sum of $27,000.00 plus interest rate of 4.25% from the filing of the complaint until its full payment, in addition to the amount of $5,000.00 awarded as attorney's fees. The judgment entered in the state court also directed Debtor and Mr. Navarro to perform mitigation work on the impacted hillside to avoid further soil deterioration on Plaintiffs' lot of land. The Plaintiffs argue that the Debtor's obligation to perform mitigation work and repair the hillside and slope damaged due to her actions, as required in State Court judgment entered on February 26, 2016, is not a debt which has been discharged pursuant to 11 U.S.C. §§523, 524, or 727(b). The Plaintiffs argue that the obligation to perform mitigation work is not a "debt" and that the Debtor has abused the bankruptcy process by obtaining a discharge injunction and using the discharge order as a justification for her failure to complete the works ordered in the State Court judgment; placing Plaintiffs' real property at a risk of loss due to: landslides, detachment of structures, cracks to the structure, detachments and the collapse of ground and vegetation. Such conditions continue to exist and continue to take place. "The continued threat of loss and damage to Plaintiffs' real property due to Debtor's failure to comply with mitigation work ordered by the State Court have placed Plaintiffs in a state of constant anxiety, stress and uncertainty as Plaintiffs have been rendered helpless by the stay of proceedings in State Court to compel the enforcement of a judgment to complete mitigation work necessary to stabilize the ground and hillside illegally cut by Debtor and Bonifacio Navarro". "The obligation to mitigate and perform work to correct the hillside are not subject to the discharge injunction as it does not constitute an act to demand payment on a claim as prohibited by sections 523, 524 and 727 of the Bankruptcy Code. "Plaintiffs hereby request that this Court enter declaratory judgment declaring that the mitigation work required from Debtor in state court judgment of February 26, 2016 is not subject to the discharge injunction entered by this Court on March 16, 2018." Furthermore, the Plaintiffs request the court to determine that the Debtor's discharge injunction does not prohibit the continuation of state court proceedings to obtain Debtor's compliance with judgment directing Debtor to perform mitigation work on the affected hillside.

On August 18, 2020, the Defendant filed her *Request for Dismissal of Motion for Declaratory Judg[]ment* (Docket No. 13, Adv. Proc.20-00089). The Debtor/Defendant argues that the she is protected by the discharge injunction order for any prepetition claim. The Defendant argues that, taking as correct the facts alleged by the Plaintiffs, the claim was discharged pursuant to 11 U.S.C. §727(b). According to the First Circuit, a request and/or order for specific performance falls within this definition, referencing In re Fin. Oversight & Mgmt. Bd., 939 F. 3d 356 (1st Cir. 2019). "The discharge injunction that arises upon entry of discharge order is perhaps the most important feature of the bankruptcy relief and helps to ensure that debtor's fresh start is realized by prohibiting creditors from attempting to collect discharged debts. 11 U.S.C.A. §524(a)(2)." "Exceptions to discharge must be strictly construed in favor of the debtor to comply with the fresh start policy underlying the Bankruptcy Code". The Debtor requests the dismissal of Plaintiffs' petition to the court for the issuance of a declaratory judgment to allow the continuation of state court proceedings.

The *Motion to Dismiss* was opposed by the Plaintiffs on September 19, 2020. The Plaintiffs argue that Debtor's motion filed pursuant to Fed. R. Civ. Proc. 12(b)(6), incorrectly alleges that even presuming as true all of Plaintiffs' allegations in the complaint, there is no remedy that this Court may grant because the remedy requested is not within the exceptions to discharge listed in 11 U.S.C. §523(a). Said *Motion to Dismiss* is premised on the erroneous argument that the State Court Judgment ordering a permanent injunction and the remediation of a hillside in Debtor's property is a "debt", a "claim" and/or a "right of payment" under the Bankruptcy Code, specifically 11 U.S.C. § 101(5), subject to the discharge injunction. "…[I]t is the Debtor that has abused the bankruptcy process by obtaining a discharge injunction and using said order as a justification for her failure to complete the works ordered by the State Court Judgment. As such, the Defendant has placed Plaintiffs' home at risk of loss due to conditions that continue to exist, and continue to place said home at a risk of loss, including posing a "latent risk of physical harm or loss of human life" as determined in the State Court Judgment." The Plaintiffs submit that the State Court Judgment ordering a permanent injunction and the remediation of a hillside in Defendant's property is not a "debt", a "claim" and/or a "right of payment" under the Bankruptcy Code 11 U.S.C. § 101(5). The Plaintiffs argue that, in the present case, "the state court judgment attends to similar policy concerns found in the above case, and other environmental pollution cases, of ameliorating an ongoing hazard wherein money damages are not an alternative remedy. As such, there is no "right to payment" nor a situation of a "right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment." "In the present case, money damages are not an alternative remedy. Plaintiffs cannot accept money in lieu of the work which must be executed by the Debtor in her real property, to prevent the loss of her neighbors' home. The State Court's permanent injunction ordering mitigation measures was issued to remedy an ongoing concern of "potential destruction of the plaintiffs' home" and also the "latent risk of physical harm or loss of human life." Debtor's failure to complete the ordered mitigation risk necessary in her property does not "give rise to a right to payment" in favor of Plaintiffs as alleged by Defendant in her motion to dismiss. It only gives rise to the potential loss or destruction of Plaintiffs' principal place of residence."

The Debtor filed her *Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss* (Docket No. 26).  She argues that the Plaintiffs' attempt to exclude the state court order from the definition of claim is implausible. She argues that the effect of the state order undoubtedly requires from the defendant to pay, with currency, for the construction works. "…[T]he only manner the defendant can comply with the order is by paying to a third party to perform the structural works in the area which divides their property from defendant's." The Debtor does not have the financial resources nor the physical ability to comply with the state court's order. "The plaintiffs in their opposition pretend to equate the active and constant action of polluting, as evaluated in *In re Mark IV Indus.*, 438 B.R. 460, to the compliance of a court order which requires the demolition and construction of a retaining wall which can only be achieved by contracting third parties to perform construction works. Stopping polluting, on the contrary, is a cease and desist action which does not require construction works." She argues that exceptions to discharge must be strictly construed in favor of the debtor to comply with the fresh start policy underlying the Bankruptcy Code.

On October 13,2020, the Plaintiffs filed a *Motion for Summary Judgment* (Docket No. 29). "[T]he Plaintiffs reallege, as in their defense to the *Motion to Dismiss*,  that the State Court Judgment ordering a permanent injunction and the remediation of a hillside in Defendant's property is not a "debt", a "claim" and/or a "right of payment" under the Bankruptcy Code 11 U.S.C. §101(5). Thus, Debtor's discharge does not impede the continuance of state court proceedings in matters related to the injunctive relief issued by the state court."

In the State Court Judgment, the local court made two separate determinations: 1) the court issued a permanent injunction ordering the Debtor and Bonifacio Navarro to perform mitigation work on the impacted hillside under certain conditions; and 2) awarded the amount of $27,000.00

plus interest, at a rate of 4.25% from the filing of the claim until the day that it is satisfied, as compensation for the damage caused by the respondent party.

The State Court Judgment directed Debtor and Mr. Bonifacio Navarro to perform mitigation work on the impacted hillside. The judgment specified the details of the work to be done and how the work was to be performed in order to correct the situation and avoid further soil deterioration. It is a judgment to mitigate/remediate an ongoing situation of imminent danger to the destruction of Plaintiff's home and life itself. As such, in this case, money damages are not an alternative remedy. There is no "debt", "claim" and/or a "right of payment", as defined in 11 U.S.C. Sec. 101(5), dischargeable under the Bankruptcy Code.

The State Court Judgment ordering a permanent injunction was issued to attend an ongoing situation of imminent danger to Plaintiffs' home and a risk of physical harm or loss of human life. In the case at hand, the State Court Judgment attends to similar policy concerns found on other environmental pollution cases, of ameliorating an ongoing hazard wherein money damages are not an alternative remedy. As such, there is no "right to payment" nor a situation of a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment". Note that in the State Court Judgment, the local court makes a separate determination as to money damages awarded against Debtor, which Plaintiffs specifically recognize that is subject to the discharge injunction and which recovery is not sought. No remedy for payment or collection of a debt is made by Plaintiffs in the complaint. Hence, the complaint filed does not need to invoke any of the exceptions to discharge enumerated in 11 U.S.C. §523(a).

Citing In re Mark IV Indus. V. N.M. Envtl. Dep't. (In re Mark IV Indus.), 438 B.R. 460, 468 (Bankr. S.D. N.Y. 2010), the Plaintiffs argue "… the mere fact that the debtor must expend money to comply does not convert an equitable obligation into a dischargeable claim. Apex Oil, 579 F.3d at 738 ("[The] discharge must indeed be limited to cases in which the claim gives rise to a right to payment because the equitable decree cannot be executed, rather than merely imposing a cost on the defendant, as virtually all equitable decrees do."); Torwico, 8 F.3d at 150 n. 4 ("Were we to adopt the bankruptcy court's position that any order requiring the debtor to expend money creates a dischargeable claim, it is unlikely that the state could effectively enforce its laws: virtually all enforcement actions impose some costs on the violator.")".

The Plaintiffs argue that "the present case is clearly distinguishable from the facts in In re Fin. Oversight & Mgmt. Bd., 939 F.3d 356 (1st Cir. 2019), wherein the Court cited Rederford, *supra*, and other cases, to hold that the prepetition judgment for specific performance was a claim subject

to the automatic stay under § 362." They reallege that money damages are not an alternative remedy and that they cannot accept money in lieu of the work which must be executed by the Debtor in her real property, to prevent the loss of her neighbor's home. Debtor's failure to complete the ordered mitigation work does not "give rise to a right to payment" in favor of the Plaintiffs. The determinations of imminent danger and risk to Plaintiffs' life and property made in the State Court Judgment persist to this day, due to Debtor's failure to comply with the injunctive relief granted by the local court and therefore, the obligation to perform mitigation work as required in the state court judgment is no "debt", "claim" an/or a "right of payment" as defined in 11 U.S.C. §101(5).

The Defendant filed her *Defendant's Reply to Plaintiff's Motion for Summary Judgment* (Docket No. 33, Adv. Proc. 20-00089), where she poses the following question: does the obligation to perform mitigation works constitute a claim that can be monetized and hence, covered by the discharge order issued in favor of the Defendant? The Debtor argues that the Civil Code of Puerto Rico provides for a remedy when someone has a duty to perform a task which does not or cannot comply with. Article no. 1051, of the Civil Code of Puerto Rico (1931), 31 L.P.R.A. § 3015, provides:

> *§ 3015. Performance at expense of person obligated; badly done thing ordered undone. If the person obliged to do something should not do it, it shall be ordered to be done at his expense. This shall also be done should he act in contravention of the tenor of the obligation. Whatever has been badly done may also be ordered to be undone.[1]*

As argued by the Debtor, "[a]rticle 1051 irrefutably contradicts the core of Plaintiffs rationale that actions ordered by a court of law cannot be substituted by monetary remedy. Plaintiffs' claim or remedy can be substituted with money. Moreover, it can only be performed by investing funds in construction permits, labor and materials. Therefore, the claims can be monetized, and such a remedy is a "claim" that is discharged in bankruptcy. Plaintiffs' pretention to exclude the state court's order against the defendant from the broad definition of claim given by the Bankruptcy Code lacks legal grounds. On the contrary, almost all courts of law, including the United States Supreme Court and the Court of Appeals for the First Circuit, have consistently and clearly concluded that an obligation or judgment for a specific performance constitutes a claim, which can be monetized and hence, be discharged by a Bankruptcy Court.

---

[1] Article 1080 of the new "Civil Code of Puerto Rico, Law No. 55 of the 1st of June, 2020.

Relevant Uncontested facts

The Court finds that the following facts are uncontested:

1.  On February 2, 2007 Plaintiffs filed an action for injunctive relief and damages against Debtor, Bonifacio Navarro and Priscilla Betancourt before the Superior Court of Caguas, case no. EPE2007-0105 (802). *See Motion to Dismiss filed by the Defendant at Docket No. 13.*

2.  After trial in the merits, a judgment was entered by the Court of First Instance, Judicial Center of Caguas, in favor of the Plaintiffs on February 26, 2016, against the Debtor and her father Mr. Bonifacio Navarro. *See Exhibit A attached to the Complaint.*

3.  The state court judgment included two components: a permanent injunction pursuant to Rule 57 of the Rules of Civil Procedure and a damages determination pursuant to Article 1802 of the Code of Civil Code. *See Exhibit A attached to the Complaint.*

4.  As to the permanent injunction, the court ordered the Debtor and Mr. Navarro to perform the mitigation work on the impacted hillside with the following conditions:

    a.  "Respondents must expand the gabion wall by widening its perimeter to a distance of no less than 123 linear feet

    b.  Of those 123 linear feet, the first segment of 38 linear feet will have a nominal height of a minimal of 12 feet.

    c.  The subsequent 85 linear feet of gabion will be spread out in the direction of the road's curve, starting at 12 feet of nominal height at the low portion and ending gradually at a height of 4 feet at the highest portion of the road." *See Exhibit A attached to the Complaint.*

5.  The court ordered: "[t]o carry out the labor of mitigation, the respondents must first conduct a cleaning of the construction area; the soil located in the impacted hillside will have to be removed to stabilize the same; select material will be deposited that will then be compacted behind the gabion wall at a maximum slope of 45 degrees; and adequate vegetation will be planted to prevent the erosion of the exposed soil, along with any other conditions imposed by relevant agencies. Respondents must comply with the applicable laws and regulations for the construction work. Prior to the mitigation labor, the respondents must request and obtain a construction permit to carry out the required labor". *See Exhibit A attached to the Complaint.*

6. The court reached the above determinations after listening to the expert testimonies of Eng. Aurelio Garcia Rivera, civil engineer; Eng. Mario Soriano Ressy a geological engineer and Eng. James A. Baigés, expert in soil with a master's degree in geotechnics. *See Exhibit A attached to the Complaint.*

7. As to the action for damages the court ordered the respondents to pay the amount of $27,000.00 plus interest at a rate of 4.25% from the filing of this claim until the day that it is satisfied and the amount of $5,000.00 in lawyer fees and the costs and expenses incurred by the plaintiffs in the state court case. *See Exhibit A attached to the Complaint.*

8. On December 14, 2017, the Debtor filed a Chapter 7 petition. *See Docket No. 1, Lead Case 17-07289.*

9. The Debtor included the Plaintiff Jose A. Lugo Alejandro in Schedule E/F as a creditor who have unsecured claims totaling $40, 647.50 (Docket No. 1, Lead Case No. 17-07289).

10. The meeting of creditors was held on January 10, 2018. *See Trustee's Report After Meeting of Creditors at Docket No. 13, Lead Case 17-07289.*

*11.* On March 16, 2018, the court granted the Debtor a discharge under 11 U.S.C. §727. *See Docket No. 17, Lead Case 17-07289.*

12. On May 28, 2018, Chapter 7 Trustee, Mr. Wigberto Lugo Mender closed the 341 meeting and filed the Chapter 7 Trustee's Report of No Distribution. Additionally, the Trustee filed a Notice of Abandonment of Property located at Carr. 739 Km 2.0 Bo San Antonio, Sector Las Americas, Caguas, PR and 33.33 unliquidated share of the property interest located at Caguas P.R. *See Dockets Nos. 20, 21 and 22, Lead Case No. 17-07289.*

13. On July 3, 2018, the court entered an *Order Discharging Trustee and Closing the Case*. *See Docket No. 26, Lead Case No. 17-7289.*

Issue

The issue before the court is whether the Plaintiffs have a "claim" pursuant to 105(5) or if the Injunction Order issued by the state court is not a claim and, therefore, does not fall within the purview of the discharge order entered under 11. U.S.C. §727.

Applicable Law and Analysis

*Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)*

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that a complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has prima facie plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged facts. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

-10-

In <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one is to isolate legal conclusions. Step two is to take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see <u>Pérez v. Rivera (In re Pérez),</u> 2013 Bankr. LEXIS 1561 at 9-10, 2013 WL 1405747 at 3 (Bankr. D.P.R. 2013); <u>Zavatsky v. O'Brien</u>, 902 F. Supp. 2d 135, 140 (D. Mass. 2012); <u>Guadalupe-Báez v. Pesquera</u>, 819 F.3d 509, 2016 U.S. App. Lexis 7173, *7 (1st Cir. 2016).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. See <u>Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.)</u>, 617 B.R. 181, 190-91 (Bankr. D.P.R. 2020). "Facial plausibility requires the facts in the complaint to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that relief is "more than a sheer possibility."" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In the present case, the facts are not contested. The court must therefore determine if the remedy requested by Plaintiffs is plausible, that is, the request of a declaratory judgment stating that the State Court Injunction Order is not a claim pursuant to 11 U.S.C. §101(5) and, therefore, unaffected by the discharge granted to the Debtor.

### *Is the Prefiling Injunction Order a Claim pursuant to 11 U.S.C. 101(5)?*

The facts in the present case are not disputed, for the purpose of the *Motion to Dismiss*. However, the parties dispute the characterization of the pre-bankruptcy *Injunction Order*. The Plaintiffs state that the *Injunction Order* is not a claim as defined by 101(5) and 101(12) and, therefore, not subject to the discharge order. However, the Defendant argues that the claim is an equitable remedy that can be monetized and, therefore, a claim discharged by the Debtor. The characterization of the *Injunction Order* is relevant to determine if the debtor's obligation pursuant to the order was discharged.

Section 727 of the Code authorizes a discharge in a Chapter 7 bankruptcy case. 11 U.S.C. § 727(a). Subsection (b) of that section provides in relevant part that "a discharge under subsection

-11-

(a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S. C. § 727(b).

Furthermore, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Section 101(5) defines the term "claim" as a:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

Thus, the term "claim" includes either a "right to payment" or a "right to an equitable remedy" for a debtor's breach of performance so long as the breach gives rise to a right to payment. Moreover, "[b]ecause Congress intended the term "claim" to be expansive, the Supreme Court has directed that the term be given the "broadest available definition" to permit the most comprehensive relief in the bankruptcy case." Hon Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual § 6:4 (5th ed.2015-1). *See* In Re Arias Nussa, 565 B.R. 209 (D.P.R. 2017).

In addition, the term "debt" is defined as a "liability on a claim."11 U.S.C. § 101(12). Thus, "a creditor has a "claim" against the debtor and the debtor owes a "debt" to the creditor." Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶101.12 (16th ed. 2015). "The reflexive definitions of 'claim' and 'debt' reveal 'Congress' intent that the[ir] meanings . . . be coextensive.'" In re Hann (Hann v. Educ. Credit Mgmt. Corp.), 476 B.R. 344, 354 (B.A.P. 1st Cir. 2012).

Furthermore, "[a]bsent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law." In re Melillo, 392 B.R. 1, 4 (B.A.P. 1st Cir. 2008), quoting Securities Exchange Comm'n v. Cross (In Re Cross), 218 B.R. 76, 78 (9th Cir. BAP 1998).

To participate in a bankruptcy distribution, a creditor must have a "claim" under § 101(5) of the Bankruptcy Code. 11 U.S.C. § 101(5)(B) (2010). An equitable remedy is a "claim" only if the underlying breach gives rise to a right to payment. *Id*. Thus, where a creditor receives a judgment entitling him to specific performance […], that person will have a "claim" if the specific performance decree may be satisfied by an alternative award of monetary damages. In re Acevedo,

-12-

441 B.R. 428, 435 (Bankr. S.D.N.Y. 2010) *referencing* In re A.J. Lane & Co., Inc., 115 B.R. 738, 742 (Bankr. D. Mass. 1990) (holding a seller's obligation under a contract for the sale of real estate is treated as a claim in bankruptcy only if the buyer has not only a right to specific performance, but also the right to damages). This provision avoids giving a buyer with an equitable remedy reducible to money more favorable treatment than he would normally obtain through monetary damages alone. *Id*. at 743.

An equitable remedy (equitable relief) is defined by *The Wolters Kluwer Bouvier Law Dictionary Desk Edition* as follows:

> "[i]njunction, specific performance, restitution, or other remedies exclusive to equity. Equitable remedies, in general, are in personam orders requiring the defendant to do equity to the plaintiff. Equity does not employ legal remedies unless there are ancillary legal claims in a predominately equitable cause, thus damages are rarely given in equity. A court in equity has an obligation to fashion such a remedy as is required to do justice according to the peculiar facts before it. The most common form of equitable remedy is the injunction. Other forms include specific performance, accounting, rescission, division, declaratory relief, estoppel, subrogation, rectification, a constructive trust, an equitable lien, and equitable restitution. Equity may also employ the prerogative writs, such as mandamus and prohibition."

Here, the court agrees that the *Injunction Order* is an equitable remedy. However, an equitable remedy will be a "claim" only if the underlying breach gives rise to a right to payment.

The Plaintiffs argue that the *Injunction Order* in the present case is analogue to the order made in the case of In re Torwico Elec., Inc., 8 F.3d 146, 150 (3d Cir.1993), and similar cases, as it "attends similar policy concerns" by "ameliorating an ongoing hazard wherein money damages are not an alternative remedy." However, the court notes that, generally, in environmental pollution cases courts have determined that the orders were not claims, as they were made pursuant to state policy powers. The court in N.Y.C. Hous. Auth. v. G-I Holdings, Inc. (G-I Holdings, Inc.), 514 B.R. 720 (Bankr. D.N.J. 2014), makes a thorough analysis of the environmental cases that have needed to decide whether a cleanup order was or was not a claim pursuant to 11 U.S.C. §101(5). The court concluded:

> "…some courts considering the issue of injunctions in environmental cases have found such injunctions to constitute a claim within the meaning of § 101(5) of the Bankruptcy Code while others have found such injunctions do not depending on the factual context. According to this Court's reading of those cases, the cases are not in conflict with one another. Rather, the courts agree that the obligation to address an ongoing and continuing threat imposed by a governmental agency with police or

-13-

regulatory power is not a claim while other obligations may give rise to a claim, such as when the governmental agency is acting as a creditor rather than as a regulator." G-I Holdings, Inc., at 758-759.

Furthermore, in Krafczek v. Exide Corp., No. 00-1965, 2007 U.S. Dist. LEXIS 29248, 2007 WL 1199530 (E.D. Pa. Apr. 19, 2007), a private party filed a citizen's suit under §7002 of the Resource Conservation and Recovery Act (RCRA) against a bankrupt corporation, alleging that it had contaminated the owner's property and requested an order to decontaminate. There, the court reasoned:

> "A state can exercise its regulatory powers and force compliance with its laws; but individual plaintiffs may not. Plaintiffs in this case do not possess these powers and thus differ from the plaintiff in Torwico. Their request for a mandatory injunction does not fall under the narrow exclusion for state environmental law enforcement actions recognized in Torwico. Therefore, their decontamination request is a "claim" barred by the Bankruptcy Court's final injunction and their complaint will be dismissed."

A state regulatory agency can exercise its regulatory powers and force compliance with its laws, even if a bankruptcy debtor must expend money to comply. But even such agencies cannot force a debtor to pay money when they are no longer acting in a role of regulators but exclusively acting as creditors. See In re Torwico Elecs, 8 F.3d 146, 150 (3d Cir. 1993).

Moreover, the Court of Appeals for the First Circuit in In re Fin. Oversight & Mgmt. Bd., 939 F.3d 356 (1st Cir. 2019), recently discussed when an equitable remedy gives rise to a right to payment:

> "A 362(a)(1) "claim" comprises rights to equitable remedies for breach of performance that "give[] rise to a right of payment," 11. U.S.C. §101(5)(B) –i.e., "if a monetary payment is an alternative for the equitable remedy," Rederford v. U.S. Airways, Inc., 589 F.3d 30, 36 (1st Cir. 2009). The parties agree that Ponce's judgment is an equitable remedy and is for breach of performance, but dispute whether "it gives rise to a right of payment." Ponce argues that its equitable remedy cannot be reduced to a monetary award because, even if Ponce recovered the cost of completing the projects, it lacks the debtors' expertise and authorization to "wire… underground power distributions" for a specific project. Ponce does not say whether these, or similar, impediments also affect the remaining projects.
>
> Regardless of whether and to what extent Ponce requires the debtors' assistance, its argument fails. Ponce assumes that monetary damages would only be the amount necessary to complete the projects and, without the debtors'assistance, it could not be whole. But if the Commonwealth court could similarly reduce the projects'further

delay or cancellation to monetary damages, then the Title III court could similarly reduce the projects' further delay or cancelation to monetary damages.

This court, and others, have reduced other equitable judgments to money damages, despite the asserted inability of a damages remedy to "purchase" the performance of the underlying contract. *See* Rederford, 589 F.3d at 37 (concluding that reinstatement following termination was a "claim" as money damages served as an alternate remedy); In re Nickels Midway Pier, LLC 255 F. App'x 633, 637-38 (3d Cir. 2007) (reducing an action for specific performance of a contract for real property to money damages and classifying it as a "claim"); Vil v. Poteau, No 11cv-11622-DJC. 2013 U.S. Dist. LEXIS 104943, 2013 WL 3878741, at *8-9 (D. Mass. July 26, 2013) (classifying as a "claim" an injunction to cease copyright infringement); see also In re The Ground Round, Inc., 482 F. 3d 15, 20 (1st Cir. 2007) (dictum) (stating that 11 U.S.C. § 101(5) would clasify as a claim a specific performance remedy for which money damages could substitute –were the remedy "not for return of specific property"); 2 Collier on Bankruptcy ¶101.05 [5] (16th ed. 2009) (stating that when a right to payment may satisfy a judgment for specific performance, the judgment is a "claim"). We add that the fact that the costs of compliance with the prepetition judgment may be difficult to estimate does not prevent the enforcement action from being a "claim." See Woburn Assocs. V. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 (1st Cir. 1992) (holding a "contingent, unliquidated, and unmatured" right to indemnification to be a "claim"). We conclude that the right to equitable remedies here gives rise to money damages under the meaning of §362(a)(1). Independently, the stay applies for that reason." In re Fin. Oversight & Mgmt. Bd., 939 F.3d 356, 362 (1st Cir. 2019).

The state court judgment against the Debtor in the present case was issued pursuant to a claim under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A § 5141, which in most cases gives rise to a damages award. Therefore, this court concludes that the equitable judgment, which includes a ruling for specific performance, is a claim pursuant to 11 U.S.C. §101(5)(B). The court cannot construe the *Injunction Order* issued by the Superior Court of Caguas as a disentangled separate remedy that does not give rise to a right to payment. The fact that the state court determined that mitigation was an adequate part of the remedies granted to the Plaintiffs does not signify that an additional award of monetary damages was not a viable alternative. The injunction order was issued as part of the judgment for civil responsibility pursuant to Article 1802 of the Civil Code of Puerto Rico. In the present case, the equitable remedy (the *Injunction Order*) is a claim pursuant to 11 U.S.C. §101(5)(B) as the underlying breach, that is, the acts that triggered the civil responsibility, give rise to a right to payment.

The court finds support in In re Cont'l Airlines, 125 F.3d 120 (3d Cir. 1997), which determined that having found in other cases that awards of monetary damages were sufficient in similar circumstances[2], then a monetary award was a viable alternative to an equitable remedy.

Furthermore, the Plaintiffs are not entities entitled to enforce compliance of certain laws against the Defendant or to enforce regulatory policies. They are private citizens and this a private vicinal dispute which resulted in civil responsibility. The fact that the construction performed by the Defendant lacked adequate permits does not provide the Injunction Order regulatory powers that can survive the discharge granted to the Defendant pursuant to 11 U.S.C. §727.

## Conclusion

In view of the foregoing, the court finds that the *Injunction Order* issued by the Caguas Superior Court is a pre-petition claim pursuant 11 U.S.C. §101(5)(B) and, therefore, discharged pursuant to the Order entered on March 16, 2018 (Docket No. 17, Lead Case 17-07289).

Judgment dismissing the case shall be entered.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of February 2021.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[2] In In re Cont'l Airlines, 125 F.3d 120 (3d Cir. 1997) the court needed to determine if seniority integration was an equitable remedy that could give rise to a right to payment. The court concluded that it could, as the court itself had awarded monetary damages in similar circumstances.

-16-